IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| **SHANA HARGROVE** | * | |
| **AS POWER OF ATTORNEY** | | |
| **FOR KEVIN WELCH** | * | **CIVIL ACTION NO.:** 1:23-cv-3381 |
| PLAINTIFF | * | |
| v. | * | |
| **MEDSTAR WASHINGTON HOSPITAL** | * | |
| **CENTER,** *ET AL.* | | |
| | * | |
| DEFENDANTS | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT II OF
THE AMENDED COMPLAINT**

Defendants, Stephen Matthew Luczycki, M.D., Maxwell A. Hockstein, M.D., Kaitlyn Marie Dunphy, M.D. and Medstar Washington Hospital Center, ("MWHC") (Collectively "Defendants"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), file this Memorandum of Law in Support of Motion to Dismiss Count II of the Amended Complaint filed by Plaintiff Kevin Welch (through his power of attorney, Shana Hargrove) ("Plaintiff" or "Mr. Welch").

**I.     INTRODUCTION**

On November 9th, 2023, Plaintiff filed a Complaint against Defendants, setting forth a claim for medical malpractice (negligence) (Count I) and a claim for negligent infliction of emotional distress ("NIED") (Count II). On December 12, 2023, Defendants filed a Motion to Dismiss Count II ("NIED").  In response, Plaintiff filed an Amended Complaint on December

22, 2023, withdrawing the Count II ("NIED") claim and replacing it with Count II - Violation of the D.C. Consumer Protection and Procedures Act Code 28-3905 ("CPPA"). [1] Both Count I and Count II arise out of emergency medical care that Defendants performed in order to save Plaintiff's life. Count II ("CPPA"), cannot stand for the following reasons: Plaintiff has failed to state a claim upon which relief under the CPPA can be granted; this is not one of the "rare" medical malpractice cases that also meets the elements of a CPPA claim, and allowing this claim to proceed would run the risk of "blurring the lines" between CPPA claims and traditional medical malpractice claims; and this case falls squarely within the exclusion from the CPPA for aspects of the practice of medicine "premised on public service or ethical norms. In addition, punitive damages are not appropriate, because Plaintiff does not allege, and cannot allege based on the facts, that Defendants engaged in "egregious conduct" and displayed "actual malice." Hence, a separate claim for CPPA must be dismissed as a matter of law because Plaintiff has failed to state a claim for any form of CPPA violation upon which relief may be granted. Defendants, therefore, request dismissal of Count II of the Amended Complaint. In the alternative, Defendants request that Plaintiff's prayer for punitive damages be stricken.

II.    **ALLEGED FACTS**

Plaintiff alleges that he began to feel extreme chest pain after consuming caffeine during a long road trip. (Compl. at ¶ 12) Plaintiff called an ambulance, which transported him to Southern Maryland Hospital Center, where the medical staff determined that he needed to be airlifted to Medstar Washington Hospital Center ("MWHC"). (*Id.* at ¶ 12-14). Plaintiff was diagnosed with an ascending aortic dissection (which is an acute tear of the aorta (the main artery of the body) that

---

[1] Count II is titled as against Defendant MWHC (with Count I titled against "all defendants") but Count II generally makes reference to the individual providers as well and thus all Defendants join in this Motion to Dismiss Count II.

2

extends upwards from the heart).(*Id*. at ¶ 15). In order to treat this condition, which would have been fatal without intervention, the medical staff at MWHC performed an operation that included: (i) Type A aortic dissection repair, (ii) hemi-arch replacement, (iii) ascending aorta replacement, (iv) aortic valve resuspension (v) reconstruction of sinotubular junction, (vi) and circulatory arrest with retrograde cerebral perfusion (RCP). MWHC doctors saved Plaintiff's life, successfully completing this major emergency operation. (*Id*. at ¶ 16)

Following his operation, Plaintiff was intubated and transported to the ICU. (*Id*.) While in the ICU, Plaintiff allegedly began to "exhibit sequelae associated with the onset of a stroke and other neurological injury, including, but not limited to, weakness of his bilateral extremities, difficulty speaking, encephalopathy, and hypoxic respiratory failure." (*Id*. at ¶ 35) Plaintiff alleges that the "healthcare providers prolonged the performance of magnetic resonance imaging (an "MRI") for approximately a week after the physical and physiological manifestation of symptoms associated with a stroke and other neurological injury." (*Id*. at ¶ 36) Plaintiff alleges a number of breaches in the standard of care associated with the alleged delay in performing an MRI as well as other aspects of Plaintiff's post operative care. (*Id*. at ¶ 38). Plaintiff alleges that these breaches in the standard of care caused Plaintiff to suffer a physical injury in the form of "multiple infarcts to his brain and spine which were not present preoperatively," resulting in Plaintiff suffering "memory loss, difficulty ambulating unassisted, difficulty speaking, difficulty performing daily life activities, an inability to engage in physical recreational activity (i.e. martial arts), and behavioral tendencies associated with depression and emotional and psychological despair." (*Id*. at ¶ 37; see also ¶ 30).

MWHC is a non-profit entity. (See MWHC Answer to Amended Complaint at  ¶ 6). MWHC saved Mr. Welch's life with the emergency care that its agents performed on Mr. Welch.

This is not an informed consent case related to pre-operative choice, and all of Plaintiff's factual allegations relate to the quality of the postoperative care that Mr. Welch received. (*See generally* Plaintiff's First Amended Compl.) Like any corporate entity, MWHC publishes various aspirational value statements reflecting its corporate ethos. As set forth below, such general statements that are apirational or puffery in nature are not a violation of the CPPA under D.C. law.

### III.   ARGUMENT

#### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) The familiar pair of Supreme Court opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), guide the analysis of a Rule 12(b)(6) motion to dismiss. *Coburn v. Evercore Trust Co., N.A.*, 844 F.3d 965, 968 (D.C. Cir 2016). In *Twombly*, the Supreme Court articulated two "working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are *not* afforded such deference. *Id.* Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Although the bar for dismissing a complaint under Rule 12(b)(6) is high, courts should grant such motions where, based on the allegations in the complaint, the plaintiffs can prove "no set of facts" which would support their claim and would entitle them to relief. *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 805 (D.C. Cir. 2001).

**B.  The Court Should Dismiss Count II of the Amended Complaint Because Plaintiff Has Not Adequately Pled a Violation of the D.C. Consumer Protection and Procedures Act**

One of the aims of the CPPA is to avoid the pleadings problem associated with common law fraud claims by abridging the elements of the claim. *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1004 (D.C. 2020). As a result, to prove a violation of the CPPA, the plaintiff must prove a misrepresentation or omission of a material fact that has a "tendency" or "tends to" mislead. *District of Columbia v. Student Aid Ctr., Inc.*, 2016 D.C. Super. LEXIS 11 at 4-5 (quoting *Dahlgren v. Audiovox Communications Corp*. 2010 D.C. Super. LEXIS 9, at 26.) The Plaintiff need not prove reliance, nor need they prove an intent to deceive. *Id*. Despite the simple nature of this claim, Plaintiff has failed to adequately plead.

The fundamental flaw is that none of the alleged misrepresentations identified in Count II of Plaintiff's First Amended Complaint are actually statements of material fact. (First Amended Compl. at ¶ 49). The only factual statement identified by Plaintiff is that "MedStar Washington offers an experienced medical/dental and surgical staff of 1,500 physicians and 350 advanced practice providers." (First Amended Compl. at ¶ 49(b)). Statements are not actionable under the CPPA if they are "in fact either accurate, not misleading to a reasonable consumer, or mere puffery." *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Circ. 2011) (granting motion to dismiss CPPA claim related to AARP marketing materials). In this case, the content of the alleged misrepresentations cited in Paragraph 49 are merely aspirational in nature or classified as puffery, with the only real factual part being the statistic on the overall number of healthcare workers at the hospital, which is not a material fact. Statements that are aspirational in nature are not a violation of the CPPA. *See Earth Island Inst. v. Coca Cola Co.* 2022 D.C. Super. LEXIS 59 at 6 (granting motion to dismiss CPPA claim against Coca-Cola related to marketing

5

materials with aspirational and general statements cobbled together by plaintiff). This must be the case, because with aspirational statements and puffery, "there are no promises or measurable datapoints that would render the…statements true or false." *Id*. In other words, "there is not a measurable standard to apply as to whether or not Defendant has met these general goals." *Id*. Every other alleged statement that Plaintiff attributes to Defendants is plainly and properly classified as aspirational in nature and/or mere puffery. (*See* First Amended Compl. at ¶ 49) As a result, since these alleged statements by Defendant do not represent material facts, Plaintiff has failed to state a claim in Count II upon which relief can be granted.

Another issue with Plaintiff's pleading is that it claims Defendants have violated a litany of different provisions/subsections of the CPPA, (D.C. Code 28-3904(d), (e), (e-10, (f), (f-1), (i), (k), (p), and (u)) (First Amended Compl. at ¶ 50) when the allegations in this case bare no connection whatsoever to the factual circumstances covered by several of these provisions/subsections. First, there is no "e-10" in the statute, but assuming Plaintiff meant "e-1," that subsection is not implicated by the allegations in this case. Subsection e-1 covers a representation "that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." (D.C. Code 28-3904 (e-1)). Plaintiff's First Amended Complaint makes no such allegation. Likewise, subsection (f) covers the failure "to state a material fact if such failure tends to mislead," but Plaintiff has not alleged any omission. (D.C. Code 28-3904 (f)).

Even more puzzling is the inclusion of subsections (i), (k), and (p). Subsection (i) prohibits the advertisement or offer of "goods or services without supplying reasonably expected public demand…" (D.C. Code 28-3904(i)). Plaintiff does not allege that Defendants failed to meet public demand. Subsection (k) prohibits falsely stating "that services, replacements, or repairs are

needed." (D.C. Code 28-3904(k)). This subsection doesn't appear to apply in a healthcare context, but even if it does, Plaintiff has not alleged that Defendants represented to Plaintiff that he needed a service that he did not in fact need. Subsection (p) covers falsely stating or representing "that repairs, alterations, modifications, or servicing have been made and receiving remunerations therefor when they have not been made. (D.C. Code 28-3904(p)) This subsection only appears to apply in the context of services connected with goods, rather than services in the healthcare context, but regardless, even if it did apply, Plaintiff does not allege that Defendants represented to Plaintiff that they performed any services that they did not actually perform. Lastly, subsection (u), which covers representing "that the subject of a transaction has been supplied in accordance with a previous representation when it has not," seems to clearly only apply in the context of supplying goods, while Plaintiff's allegations only pertain to the performance of services (D.C. Code 28-3904(u)).

Plaintiff has failed to state a claim in Count II upon which relief can be granted, because a number of the statutory subsections that Plaintiff claims Defendants have violated are not implicated by the facts alleged by Plaintiff, and regardless, Plaintiff's allegations do not identify any statements or representations of material fact made by Defendants.  As such, Count II should be dismissed.

### C. This Case is not one of the "Rare" Medical Malpractice Cases which also Meets the Elements of a CPPA Claim and Allowing this Claim to Proceed would Run the Risk of "Blurring the Lines" Between CPPA Claims and Traditional Medical Malpractice Claims

Many courts have limited the application of consumer protection laws to the practice of medicine, expressing a well-founded concern that "lawsuits brought under consumer protection laws may blur the line between consumer protection and medical malpractice claims or render the 'well-developed body of law concerning medical malpractice…obsolete.'" *Frankeny v. Dist.*

7

*Hosp. Partners, LP*, 225 A.3d 999, 1006 (D.C. 2020) (quoting in part *Nelson v. Ho*, 564 N.W.2d 482, 486 (Mich. Ct. App. 1997)). As a result, a number of courts have "attempted to distinguish between traditional medical malpractice claims, which pertain to the 'actual performance of medical services or the actual practice of medicine,' from consumer protection claims, which pertain to 'allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice.'" *Id.* Some courts have achieved this aim by requiring consumers who claim that a medical service provider has violated the CPPA to present evidence of an "entrepreneurial nexus" between the alleged misrepresentation and the "economic considerations related to the medical profession," which "does not cover the skill or performance of a medical practitioner." *Frankeny*, 225 A.3d at 1006 (quoting *Dorn v. McTigue*, 121 F. Supp. 2d 17, 19-20 (D.D.C. 2000); *Dorn v. McTigue*, 157 F. Supp. 2d 37, 48 (D.D.C. 2001)). While the District of Columbia Court of Appeals, in *Frankeny*, rejected the "entrepreneurial nexus" requirement for certain select subsections of the CPPA, it noted that "any concern that the line between CPPA claims and traditional medical malpractice claims will be blurred appears to be overstated," because only "a rare medical malpractice case may meet the elements of a CPPA claim," as "the two have different elements, require different types of evidence, and permit different types of damages." *Frankeny*, 225 A.3d 999 at 1007.

In *Frankeny*, the court vacated the grant of summary judgment in the medical provider's favor, because it determined that the trial court had erroneously required the plaintiff to show an entrepreneurial nexus. *Id.* at 1002. The present matter is distinguishable in a number of crucial ways. First, *Frankeny* was an informed consent case, where the issue was whether the representations made by the defendant hospital were sufficient to put Ms. Frankeny on notice that a first-year resident, rather than an experienced board-certified surgeon, could perform part of her

surgery and that this information was material to her decision to proceed with the surgery. *Id*. The present matter is not an informed consent case, which is likely the only form of medical malpractice case that could also meet the elements of a CPPA claim. Second, in *Frankeny*, the court reasoned that Ms. Frankeny's CPPA claim was acceptable, because her CPPA claims did not, "in and of themselves, pertain to the quality of the medical service provided." *Id*. at 1009. In stark contrast, in the present matter, Plaintiff's entire case hinges on the quality of the medical service provided in the ICU *after* surgery. *See generally* Plaintiff's First Amended Compl. Specifically, in terms of Plaintiff's CPPA claim, all of the alleged misrepresentations relate to the quality of the medical services. *See* Plaintiff's First Amended Compl. ¶ 49. Because Ms. Frankeny's claims did not pertain to the quality of the medical services provided (but to whether a specific factual representation was material to her decision to proceed with surgery), the court was satisfied that "there is no concern that Ms. Frankeny is blurring the line between CPPA claims and traditional medical malpractice claims." *Frankeny*, 225 A.3d at 1009. In the present matter, the claims pertain to the quality of the medical services, and as a result there is significant, in fact overwhelming, risk of blurring the lines between the CPPA and medical malpractice, which as a matter of policy, the District of Columbia Court of Appeals has expressly sought to avoid.  For this reason, Count II of the Amended Complaint should be dismissed.

   **D.**  **This Case Falls Squarely Within the Exclusion for Aspects of the Practice of Medicine "Premised on Public Service or Ethical Norms"**

   In *Frankeny*, the court made clear that "[b]y rejecting the entrepreneurial nexus, we do not eliminate all restraints on the CPPA's reach to the medical profession." *Id*. at 1007. The court discussed one such restraint, acknowledging that "certain aspects of the practice of medicine, such as those premised on public service or ethical norms, may lend necessary context to evaluate a medical professional's conduct and determine whether it can support a CPPA claim." *Id*. at 1008.

In *Frankeny*, the court did not feel that this exclusion was triggered, so it declined to address the contours of the exclusion. *Id*. The present matter falls squarely within the ambit of this exclusion, because the present matter involves emergency lifesaving medical care performed by a nonprofit entity, which certainly qualifies as an aspect of the practice of medicine "premised on public service or ethical norms." As a result, the conduct in question cannot support a CPPA claim, and therefore Count II of Plaintiff's Complaint should be dismissed.

### E. Punitive Damages are not Appropriate as Plaintiff does not Allege that Defendants Engaged in Egregious Conduct and Displayed Actual Malice

As discussed in this Motion, Plaintiff alleges no misrepresentations of material fact made by Defendants. Instead, Plaintiff merely points at general aspirational statements of corporate ethos and puffery. Even if Plaintiff were adequately pleading misrepresentations of material fact, punitive damages are not appropriate, because Plaintiff does not, and based on the alleged facts, cannot, allege that Defendants engaged in egregious conduct and displayed actual malice. Plaintiff labels the alleged violations as "intentional, knowing, reckless…," (Plaintiff's First Amended Compl. ¶ 50) but this is not enough to obtain punitive damages under the CPPA, as "to obtain a punitive damages award, a plaintiff must prove that the defendant engaged in egregious conduct and displayed the requisite mental state—actual malice—by clear and convincing evidence." *Beck v. Test Masters Educ. Servs.*, 994 F.Supp.2d 90, 97 (D.D.C. 2013) (citing *District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714, 725-26 (D.C. Cir. 2003)). The court in *Beck* explained that "[p]unitive damages are a form of punishment, used to deter and punish unlawful conduct. For example, 'in the absence of 'gross fraud' or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages.'" *Beck*, 994 F. Supp 2d at 97 (citing *Boynton v. Lopez*, 473 A.2d 375, 377-78 (D.C. 1984)). Even if Plaintiff's inclusion of the word "reckless" is potentially enough to state a claim for punitive damages, the allegation of

recklessness finds no support in the alleged facts. As a result, the allegation of recklessness in this case is nothing more than a "naked assertion" devoid of "further factual enhancement," which will not suffice under the F.R.C.P. 8(a)(2) standard articulated in *Iqbal* and *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As a result, even if this Court does not dismiss the entirety of Count II, at the very least, Plaintiff's prayer for punitive damages should be stricken from the Complaint.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants, Stephen Matthew Luczycki, M.D., Maxwell A. Hockstein, M.D., Kaitlyn Marie Dunphy, M.D., and MWHC respectfully request the Court grant their Motion to Dismiss and dismiss Count II from the Complaint.

*/s/ Michael J. Halaiko*
Michael J. Halaiko (Federal Bar No. 466649)
Nelson Mullins Riley & Scarborough LLP
100 S. Charles Street, Suite 1600
Baltimore, MD  21201
(443) 392-9400 (Telephone)
(443) 392-9499 (Facsimile)
mike.halaiko@nelsonmullins.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of January 5, 2024, a copy of the foregoing

**Memorandum of Law in Support of Motion to Dismiss Count II of the Amended Complaint**

was filed and served by electronic submissions via CM/ECF, in accordance with the Federal Rules

of Civil Procedure and the Local Rules of the United States District Court for the District of

Columbia, on:

Governor E. Jackson, III
Law Office of Governor Jackson, III LLC
10 G Street NE, Suite 600
Washington, D.C.  20002

Kim Parker, Esquire
Law Offices of Kim Parker, P.A.
2123 Maryland Avenue
Baltimore, MD  21218

Counsel for Plaintiff, Shana Hargrove

*/s/ Michael J. Halaiko*
Michael J. Halaiko